**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **PIPER JAFFRAY & CO.** | § | |
| | § | |
| **v.** | § | **A-14-CV-814-LY** |
| | § | |
| **OMNI SURGICAL, LLC d/b/a SPINE360,** | § | |
| **AMENDIA, INC., AND DAVID JANICE** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Omni Surgical LLC d/b/a Spine360 ("Omni") and David Janice's ("Janice") Rule 12(B)(6) Motion to Dismiss (Dkt. No. 13), Defendant Amendia, Inc.'s ("Amendia") Rule 12(B)(6) Motions to Dismiss (Dkt. Nos. 17 and 25), Plaintiff Piper Jaffray & Co.'s ("Piper") Responses (Dkt. Nos. 19, 20, and 31), and the Defendants' replies (Dkt. Nos. 21, 22, and 32).[1]  The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  ISSUE PRESENTED**

This suit arises out of an agreement between Piper and Omni.  On or about March 11, 2011, Piper agreed to serve as Omni's exclusive financial advisor related to any sale of all or a part of Omni. Three years later, Omni entered into an agreement to sell itself, without Piper's assistance, to Amendia. Piper, believing it is owed certain fees and expenses pursuant to the agreement, has brought this suit

---

[1]Amendia has filed a Motion for Leave to File its Supplemental Reply in Support of its Rule 12(b)(6) Motion to Dismiss. (Dkt. No. 28). The Motion is **GRANTED** and the Court will consider the attached Supplemental Reply.

against Omni, Amendia, and Janice—an officer of Omni.  Piper asserts seven claims in its Second

Amended Complaint :

1.    Breach of contract against Omni;
2.    Breach of contract against Amendia, on a theory of successor liability;
3.    Tortious interference with contract against Amendia;
4.    Unjust enrichment against Amendia;
5.    Money had and received against Amendia;
6.    Tortious interference with contract against Janice; and
7.    Money had and received against Janice.

In a series of motions, each of the Defendants move to dismiss the case, contending that Piper has

failed to state any claim upon which relief may be granted.

## II.  STANDARD OF REVIEW

The Defendants' motions are made pursuant to Federal Rule of Civil Procedure 12(b)(6).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be

granted."  While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual

allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a

right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  A plaintiff's obligation "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Id.*  The Supreme Court has explained

that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a

motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's

factual allegations in the complaint as true.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d

191, 205 (5th Cir. 2009).

## III.  FACTUAL BACKGROUND

As noted, because the motion before the Court is brought pursuant to Rule 12(b)(6), the

Court takes all of the allegations of the complaint as true.  *In re Katrina Canal Breaches*, 495 F.3d

at 205.  Thus, the facts set forth below come from the live complaint, unless noted otherwise.[2]

Piper is an investment bank and asset management firm with its principal place of business

in Minnesota.  Omni is a Texas limited liability company.  David Janice, a Texas resident, is a

member and partner in the limited liability companies and partnerships that control Omni.  Amendia

is a Georgia corporation.  On or about March 11, 2011, Piper entered into a written contract with

Omni, under which Omni agreed to engage Piper as Omni's exclusive financial advisor for a

proposed transaction.  The parties defined "Transaction" as:

> any Transaction or series or combination of related transactions whereby, directly or
> indirectly, by merger, plan of exchange, sale, consolidation, recapitalization, joint
> venture or otherwise 20% or more of [Omni's] capital stock (based on shares
> outstanding) or assets (based on book value) is transferred or exchanged by you
> and/or your shareholders.

Dkt. No. 1-2 at 1.  As financial advisor, Piper would, among other things, provide Omni with

analysis of Omni's business and financial condition; help structure and plan a transaction; identify,

evaluate and contact potential buyers; negotiate the terms of the transaction; and consummate the

transaction.  *Id*.  at 1-2.

---

[2] Piper has twice amended its complaint; once to add its claim for breach of contract on a
theory of successor liability against Amendia, and a second time to reassert its claim for money had
and received against Amendia, which it had inadvertently deleted from its first amended complaint.
The Defendants have consented to Piper's amendments (Dkt. No. 29), and have notified the Court
the arguments and authorities in their motions to dismiss apply with equal force to Piper's
amendments (Dkt. Nos. 24 at 1, 25 at 1, 32 at 1).  Thus, even though the motions to dismiss preceded
the filing of the Second Amended Complaint, the parties agree that the arguments in those motions
are not moot.  The Court's analysis of the motions is therefore based on Piper's Second Amended
Complaint (Dkt. No. 30) and the documents attached to it.

In exchange for these services, Omni agreed that if it consummated "a Transaction" as defined above, either during the term of the engagement or for two years following its termination, Omni would pay a cash fee equal to the greater of 3% of the aggregate transaction value or $1.5 million, due at closing. *Id*. at 2. Omni also agreed, upon receipt of an invoice, to pay Piper's out-of-pocket expenses related to the agreement, whether or not a transaction occurred, except that any reimbursement over $50,000 required Omni's approval. *Id*. at 3. Omni also agreed to pay Piper a late payment charge, equal to 18% per annum, of any fees and expenses not timely paid in full. *Id*. at 3-4. Late charges were to be calculated from the date a fee was due and payable, or, for expenses, from 30 days following an invoice, until paid in full. *Id*. at 4.

Omni also agreed that in order to coordinate Piper and Omni's efforts, during the term of the engagement Omni would "inform [Piper] if you wish to initiate any discussions looking towards a Transaction and will work exclusively with us in such regard." *Id*. at 6. In addition, Omni agreed to furnish Piper,

> the names of all parties with which you [Omni] discussed a Transaction or which you contacted prior to our engagement, or which contact you concerning a Transaction during the term of our engagement. If, following the termination of our engagement, you discuss a Transaction with a party on the list and a Transaction Fee might be payable to us if a Transaction results, then unless you engage another financial advisor, we will not unreasonably withhold our consent to providing services you reasonably request of the nature referred to in this agreement for the time period during which the Transaction Fee might be payable.

*Id*. at 2. The agreement also contains a clause triggered if Omni received a *bona fide* offer from a third party to act as financial advisor with respect to any transaction or as agent for any offering or placement of securities "which [Omni] is willing to accept," that grants Piper the option to agree to provide those services instead, on the same terms and conditions as the third party was offering. *Id*. at 5-6. Finally, the agreement contained the following provision, addressed to Omni:

> You undertake (i) to ensure that any definitive agreement that you enter into with respect to a Transaction will provide for the transfer to Piper Jaffray at closing of the Transaction its fees and expenses, to the extent not previously paid or reimbursed by you, and (ii) not to close the Transaction until such transfer has been made to Piper Jaffray.

*Id.* at 3.

In April 2014, Piper learned that Omni had reached an agreement to sell its business to Amendia. Piper had not introduced Amendia to Omni. Piper states in its complaint that Amendia and Omni had discussed a similar purchase in 2009, but had not completed the transaction. Piper alleges that Amendia knew of the agreement obligating Omni to pay Piper a transaction fee. Piper alleges that Omni and Amendia nonetheless closed their transaction without paying Piper. On April 3, 2014, Piper wrote a letter to Omni, stating that the sale to Amendia constituted a "Transaction" under the agreement, and that upon the closing of the transaction Piper was due a fee. Piper still has not been paid the fee, nor certain out-of-pocket expenses it incurred in its work for Omni.[3] Accordingly, it brought this suit on August 22, 2014.

## IV. ANALYSIS

Between their several motions, Omni, Janice, and Amendia have moved to dismiss each of Piper's seven claims. After reviewing the complaint, the motions, and attendant filings, the undersigned finds that some, but not all, of Piper's claims are sufficiently pled to survive.[4] The Court will address the claims in the order in which Piper has pled them.

---

[3] Piper alleges that on October 14, 2013, it sent an invoice for its out-of-pocket expenses incurred as of that date. It sent a follow-up letter after learning of the Amendia transaction, on April 11, 2014. It alleges that Omni has not paid Piper those expenses, or any late charges.

[4] As noted in what follows, many of the Defendants' arguments ask the Court to consider information far beyond what is appropriate on a Rule 12(b)(6) motion to dismiss.

**A.     Breach of Contract Against Omni**

Piper first alleges that Omni breached the contract by failing to pay Piper the transaction fee and its out-of-pocket fees and expenses.  In its motion to dismiss, Omni argues that Piper has failed to state a claim for breach under New York law, as the contract is merely an "exclusive agency" rather than an "exclusive right to sell."[5]  If the contract created an "exclusive agency," Piper had the right to market Omni, but Omni retained the right to enter into a transaction without Piper's assistance.  Because Omni and Amendia entered into their transaction without any help from Piper, Omni contends that as a matter of law it does not owe a transaction fee and did not breach the contract.

The Court of Appeals of New York recently held that "a contract giving rise to an exclusive right of sale must 'clearly and expressly provide[ ] that a commission [is] due upon sale by the owner or exclude[ ] the owner from independently negotiating a sale.'"  *Morpheus Capital Advisors LLC v. UBS AG*, 23 N.Y.3d 528, 535 (2014) (citing *Solid Waste Institute, Inc. V. Sanitary Disposal, Inc.*, 120 A.D.2d 915, 916 (1986)).  Such statements must be "affirmative and unequivocal," as "an owner's freedom to dispose of her own property should not be infringed upon by mere implication." *Id*.  Qualifying language includes provisions that a fee "is payable regardless of whether [the broker] has actually procured the Purchase Agreement," or that a party "will proceed only through [the broker] and will not directly or through others negotiate the sale," or that a party will "refer all inquires or offers" to the broker for negotiation.  *Id*.  (internal citations omitted).

---

[5] The parties do not dispute that the contract is governed by New York law.  *See*, Dkt.  No. 1-2 at 7.

Omni agreed to engage Piper as its "exclusive financial advisor for the proposed Transaction." Dkt. No. 1-2 at 1. The agreement defined "Transaction" broadly, to cover "any Transaction or series or combination of related transactions" whereby Omni transferred a substantial portion of its assets to another party. *Id*. Nothing in the definition requires that Piper have brought the acquiring entity to the table. Omni also agreed to "inform [Piper] if you wish to initiate any discussions looking towards a Transaction and will work exclusively with [Piper] in such regard." *Id*. at 6. Omni agreed to pay Piper a transaction fee "in the event [Omni] consummate[s] a Transaction," and the agreement does not condition such payment on Piper having introduced the buyer to Omni. *Id*. at 2. Omni also agreed to furnish Piper "the names of all parties with which you discussed a Transaction or which you contacted prior to our engagement, or which contact you concerning a Transaction during the term of our engagement." *Id*. at 2. Finally, Omni agreed to "undertake to ensure" that any agreement would provide that Piper's fees and expenses would be paid at closing, and that Omni would not close any transaction until Piper had been paid. *Id*. at 3.

Omni's motion to dismiss is premised on the argument that, as a matter of law, the contract language just described did not grant Piper an exclusive right to sell Omni, but rather only gave Piper an exclusive right to market Omni, and thus Omni retained the right to close a transaction itself without making any payment to Piper. The Court disagrees. If anything, the language does the opposite of what Omni claims. As described above, the agreement required the payment of a fee for *any* "Transaction," without limitation. It described the relationship as "exclusive." It obligated Omni to turn any prospective purchaser over to Piper, and to give Piper the names of previous

suitors.  All of this language is consistent with an exclusive right to sell.[6]  At this stage of the

proceedings, the Court cannot find as a matter of law that the contract language created only an

agency to market Omni.

Omni also argues that Piper's breach of contract claim seeking to recover out-of-pocket

expenses should be dismissed.  It contends that Piper invoiced it for $64,518, but has not pled that

it received Omni's approval to incur more than $50,000 in out-of-pocket expenses.[7]  The contract

states that,

> Upon receipt of an invoice, [Omni] agree[s] to reimburse [Piper] for [Piper's]
> reasonable out-of-pocket expenses relating to this agreement . . . whether or not a
> Transaction occurs and whether incurred before or after execution of this agreement
> but such reimbursement will not exceed $50,000 without [Omni's] approval.

---

[6] The one clause of the contract that might be construed to suggest otherwise is titled "Other
Investment Banking Services."  That clause provided that if Omni received "a bona fide offer from
a third party" to act as either an agent for an offering or placement of securities, or a financial advisor
on a "Transaction," Omni was required to give notice to Piper, and then Piper had the option to step
into the third party's shoes and provide those services instead, on the same terms that the third party
was offering.  Dkt. No. 1-2 at 5.  Omni contends that if its relationship with Piper granted Piper an
exclusive right to sell Omni, then there would not have been a need for this clause, as Omni would
not have been in a position to accept such an offer.

There is, however, at least one scenario in which this clause is compatible with the agreement
being construed to be an exclusive sale agreement.  The agreement provided that it could be
terminated by either party with 10 days notice, after an initial 180-day period.  It further provided
that the $1.5 million fee was due for any "Transaction" that took place in the two years after
termination.  Assume that Omni had terminated the agreement on January 1, 2012, and was then
approached by a new financial advisor in January 2013, seeking to assist Omni in finding a buyer.
Without the right of first refusal clause, Omni would be free to enter into this agreement, and so long
as any sale flowing from the new advisor closed after January 1, 2014, Omni would not be obligated
to make any payment to Piper.  By the inclusion of the clause, Piper protected itself from this
situation by giving it the right to decide if it wished to enter into a new agreement with Omni after
termination by exercising its right of first refusal, thereby extending its opportunity to profit from
a sale of Omni.

[7] A copy of the $64,518 invoice is attached to the complaint, Dkt. No. 30-3 at 5, and thus the
Court may consider that invoice in the context of this Rule 12(b)(6) motion. *Wilson v. Birnberg*, 667
F.3d 591, 600 (5th Cir. 2012).

Dkt. No. 1-2 at 3. There are two problems with this argument. First, Piper actually never pleads it is seeking any particular amount for expenses. Instead, it states only that it invoiced Omni for out-of-pocket expenses pursuant to the contract, and that Omni has not paid the expenses, in breach of the agreement. Dkt. No. 30 at ¶¶ 17-18. So although the invoice Piper sent requested more than $50,000, Piper's pleadings do not state whether it is seeking the full amount of the invoice, $50,000 of that amount, or some other figure. Further, the contract does not prohibit Piper from *incurring* more than $50,000 in expenses, or seeking payment for more than $50,000. Rather it limits *reimbursement* to $50,000 unless Omni approves a greater amount. Whether Piper sought approval, and whether Omni granted approval, for reimbursement in excess of $50,000 is a fact issue on which the pleadings are silent. Regardless, Piper has at least stated a claim for $50,000 in expenses. Because Piper has stated a plausible claim for breach of the agreement with regard to its expenses, dismissal is unwarranted.

**B.      Breach of Contract Against Amendia as Successor in Interest**

Piper has also brought suit against Amendia, alleging that as Omni's successor in interest it is liable for Omni's breach of its agreement with Piper. Amendia has moved to dismiss on much the same grounds as Omni, namely that the agreement between Piper and Omni was merely an exclusive agency and not an exclusive right to sell. For the reasons already explained, Piper's claim should not be dismissed on this ground.

Amendia submits three other reasons why Piper's contract claim should be dismissed. First, Amendia argues that the agreement was not valid or enforceable against Amendia because the signatory of the agreement with Piper—Carter Burton, President of Omni at the time—did not have authority to bind Omni to an extraordinary contract. Second, Amendia argues that the transaction

fee Piper seeks is effectively a finder's fee.  Under New York's statute of frauds, such fees "generally are allowed only upon a showing of affirmative written evidence of assent to paying the fee by the person to be charged."  *Citrin v. Columbia Broad. Sys., Inc.,* 29 A.D.2d 740, 741, 286 N.Y.S.2d 706, 707 (N.Y. App. Div. 1968).  Amendia argues that because *it* has no written agreement with Piper regarding a finder's fee, the contract violates New York's statute of frauds.  Finally, Amendia argues that Piper has not alleged any facts establishing Piper's performance under the contract, or that Amendia benefitted from that performance.

Whether Carter Burton had authority to bind Omni is a fact issue, properly reserved for a motion for summary judgment, not a motion to dismiss.  The same is true for Amendia's remaining arguments, which collapse into the fact issue of whether Amendia is Omni's successor in interest.  Accordingly, Amendia's motion to dismiss on these grounds should be denied.

## C.     Tortious Interference with Contract Against Amendia

Piper has pled in the alternative that Amendia tortiously interfered with the contract between Omni and Piper.[8]  Piper and Amendia disagree regarding whether Texas or Minnesota law governs this claim. The court need not make a choice of law determination at this time, as under either state's law, Piper has sufficiently stated a cause of action.  In Minnesota, a plaintiff states a claim of tortious interference when he shows "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Furlev Sales & Associates, Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). In Texas, the elements are "(1) existence of a contract subject to interference, (2) willful and

---

[8] In its reply, Amendia contends that Piper cannot maintain claims for both breach of contract and tortious interference with contract.  It is mistaken.  "A party may state as many separate claims or defenses as it has, regardless of consistency."  FED. R. CIV. P.  8(d)(3)

intentional interference, (3) interference that proximately caused damage, and (4) actual damage or loss." *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 644 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)

Piper alleges that Amendia had knowledge of the contract between Piper and Omni and was aware of its terms, including the terms requiring Omni to pay Piper a transaction fee at closing, and barring Omni from closing without paying the fee. Piper alleges that Amendia willfully and intentionally induced Omni to breach these obligations, thereby depriving Piper of its fee. Piper contends that Amendia did this for its own benefit, as the assets that Amendia received from the purchase were worth more than they would have been worth had Omni paid Piper's fee (*i.e.*, Amendia received an additional $1.5 million in the closing).

The only element about which there is any question is Minnesota's requirement that the tortious interference occurred "without justification." Under Minnesota law, "a party may justifiably interfere with another's contract if the 'alleged interferer has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected and employs no improper means.'" *St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, 94 F.Supp.2d 1033, 1049 (D. Minn. 2014) (citation omitted). Amendia argues that Piper has failed to satisfy this element in its pleadings. However, "whether interference is justified is ordinarily a factual determination of what is reasonable conduct under the circumstances," and "the burden of proving justification is on the defendant," not the plaintiff. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998). Thus, whether any actions taken by Amendia were or were not justified is a fact issue not appropriately decided on a motion to dismiss.

Amendia makes several other arguments as to why Piper's claim for tortious interference should be dismissed.  First, Amendia repeats its argument that Omni did not breach the contract, as the agreement only constituted an exclusive agency, not an exclusive right to sell.  But for the reasons stated above, Piper's claim should not be dismissed on this ground.  Amendia also repeats its argument that Carter Burton did not have authority to bind Omni.  But as noted above, this factual argument is not a proper ground for dismissal at this early stage of the proceedings.

Amendia next argues that its acquisition of Omni closed before Piper's April 3 letter informing Omni that Piper considered the sale to Amendia to be a "Transaction" under the contract, and therefore expected to be paid a fee.  It contends that this demonstrates that Amendia did not know about the contract before the closing, and therefore could not have interfered with it when it closed the transaction.  To show that the closing pre-dated the letter, Amendia has attached a "Bill of Sale," dated March 31 and April 1, 2014.  Dkt. No. 17-1 at 8-10.  Once again, Amendia appears to have forgotten that it has a filed a motion to dismiss for failure to state a claim.  Faced with a motion to dismiss, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint."  *Wilson, supra.,* 667 F.3d at 600.  Trying to avoid this limitation, Amendia argues that the court may consider the Bill of Sale because it is "central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  "Documents are central when they are necessary to establish an element of one of the plaintiff's claims.  Thus, when a plaintiff[']s claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Johnson v. Wells Fargo Bank, NA*, 999 F.Supp.2d 919, 926 (N.D. Tex. 2014). While it is true that Piper's claim is based on a contract, the contract in question is the agreement

between Piper and Omni, *not* the acquisition and sale agreement between Omni and Amendia. And

while Piper's complaint mentions *that* Omni and Amendia had reached an agreement, it never

references the Bill of Sale, and none of its claims depend on what the terms of the full agreement

were.[9]  In reality, Amendia has offered the Bill of Sale in order to raise a defense.[10]  Such rebuttal

documents should be ignored at the motion to dismiss stage. *Wilson, supra.,* 667 F.3d at 600

(quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996).  Moreover, what

the documents purport to establish—when the transaction closed—does not establish when or if

Amendia knew of Omni's agreement with Piper.  It is entirely possible that Amendia was aware of

the agreement before Piper sent its April 3 letter.  As already mentioned, such factual matters are not

appropriately settled on a motion to dismiss.

Finally, relying on several cases applying New York law, Amendia contends that the

Piper/Omni contract cannot form the basis for a tortious interference claim under New York law,

because there can be no interference with a contract that is terminable at will.  The flaw in this

argument flows from the nature of the breach that Amendia is alleged to have induced—Omni's

failure to pay Piper's fee.  The obligation to pay Piper for the services called for in the agreement

was an obligation that survived termination. The contract explicitly obligates Omni to make the $1.5

---

[9] Ironically, Amendia wants the Court to resolve the motion to dismiss by considering some of the facts related to Amendia's acquisition of Omni, but not all of them.  It has refused to disclose most of the agreements which document the acquisition. *See* Dkt. No. 22 at 4 (Amendia states that the acquisition was documented by "multiple documents that contain sensitive confidential business information that cannot be disclosed publicly," and "to do so would result in Amendia's breach of its confidentiality and nondisclosure obligations").

[10] In one of its replies to its motion, Amendia also argues that its legal right to close the transaction constitutes an absolute privilege, barring a claim for tortious interference. Dkt. No. 22 at 7.  As this argument was raised for the first time in a reply, it is not properly before the Court. Regardless, whether such a privilege exists is a fact issue that cannot be resolved on a motion to dismiss.

million payment for any "Transaction" that took place "during the two-year period following termination of our engagement." Dkt. No. 1-2 at 2. Because the payment obligation was not terminable at will, interference with that obligation states a claim under New York law.

**D.      Unjust Enrichment Against Amendia**

Piper also brings a claim against Amendia for unjust enrichment. Piper pleads that prior to the closing of the transaction between Amendia and Omni, Amendia had knowledge of the contract and was aware of its terms, including its term requiring Omni to pay Piper. It claims that Amendia nonetheless closed the transaction knowing the transaction fee was not being paid, and thereby received more assets in the sale than it was entitled to.[11] Amendia argues that the claim should be dismissed because Piper has not alleged an identifiable benefit received by Amendia.

Piper brings its claim under Georgia law (Amendia's state of residence). Applicable Georgia law provides,

> Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for. In other words, [t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated. Thus, to state a claim for unjust enrichment, a plaintiff must allege that the defendants have received money belonging to the plaintiff or to which [the plaintiff] is in equity and good conscience entitled.

*Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1366 (N.D. Ga. 2012) (internal punctuation and citations omitted). By this standard, Amendia is correct: Piper has failed to allege facts giving rise to a claim for unjust enrichment. Amendia received no benefit from Piper. Any

---

[11] In its motion, Amendia argues that Piper cannot have it both ways: it cannot bring a claim for breach of contract and unjust enrichment, as the latter is precluded by the existence of a contract. This argument is meritless. As noted, *supra*., Piper is entitled to plead claims in the alternative.

services which Piper may have rendered under the contract by definition pre-dated the closing, and benefitted Omni, not Amendia. Indeed, any value provided by such services ceased to exist after the transaction was completed. As Piper has not alleged that it conferred a benefit upon Amendia—as opposed to Omni—it cannot maintain an action for unjust enrichment. This claim should be dismissed.

**E.      Money Had and Received Against Amendia**

Piper's final claim against Amendia is for money had and received. Its allegations are essentially the same as its claim for unjust enrichment: that Amendia knew of the contract between Omni and Piper and Omni's obligation to pay Piper, and that the net value of the assets acquired by Amendia did not include a deduction or corresponding liability for the transaction fee owed to Piper. By this theory, Amendia received assets—money—that rightfully belonged to Piper. Amendia argues that Piper has failed to state a claim for money had and received because Amendia does not "hold" any money of Piper's; it *paid* money to Omni in exchange for its assets. In other words, no money was either "had" by Piper or "received" by Amendia; Amendia is not in possession of anything which belongs to Piper.

Piper contends that the applicable law for this claim is Texas law, where "all [a] plaintiff need show is that [a] defendant holds money which in equity and good conscience belongs to [plaintiff]." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686, 687-88 (1951)). Such claims are "less restricted and fettered by technical rules and formalities than any other form of action," aiming "at the abstract justice of the case," and looking "solely at the inquiry, whether the defendant holds money, which belongs to the plaintiff." *Id*.

15

Notwithstanding the free-form nature of this cause of action, Piper fails to allege the type of facts that give rise to a claim for money had and received.  The money Piper alleges Amendia is wrongfully in possession of was never in Piper's possession, nor did Piper transfer it to either Omni or Amendia.  Rather, Piper contends it provided Omni with services, and Omni failed to pay for those services before Amendia acquired Omni.  Even taking as true every fact Piper alleges, Piper has failed to state a claim for money had and received.  Amendia never received any money or other benefit from Piper.  At most, it merely benefitted from Omni's failure to pay Piper.[12]  Accordingly, this count should be dismissed for failure to state a claim.

**F.      Tortious Interference With Contract Against David Janice**

In addition to its claims against Omni and Amendia, Piper also brings claims against David Janice. The parties dispute whether Minnesota or Texas law applies to these claims.  As with Piper's tortious interference claim against Amendia, the Court need not make a choice of law determination, as under either state's law Piper has stated a claim against Janice.  Piper alleges that Janice had knowledge of the contract between Piper and Omni, as well as its terms, and willfully and intentionally induced Omni's breach of its obligations under the contract.  Piper claims Janice did so outside the scope of his authority and solely for his own benefit, and directly benefitted from Omni's breach of its obligations to Piper.

Janice by his motion contends that he acted in good faith, in support of what he saw as Omni's best interest.  He contends that Piper does not plead he acted with malice, ill will, or an intent to harm Omni, or that Omni objected to any of his actions.  Furthermore, as an officer of

---

[12]In fact, if Piper were correct, and the money had and received cause of action imposed liability on an acquiring party in these circumstances, successor entities would always be liable for the outstanding liabilities of the entities they acquire.

Omni,[13] he cannot be held to have interfered with Omni's contracts.  He notes that in Minnesota, "a company officer, agent or employee is privileged to interfere with or cause a breach of [contract], if that person acts in good faith, whether competently or not, believing that his actions are in furtherance of the company's business." *Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 507 (Minn. 1991).  However, "if the defendant's actions are predominantly motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff," the privilege may be lost.  *Id.*  Similarly, under Texas law, "to maintain a tortious interference suit against a corporate agent or representative, a plaintiff must show that the agent acted willfully and intentionally to serve the agent's personal interests at the corporation's expense." *Mumfrey v. CVS Pharmacy, Inc*., 719 F.3d 392, 402-03 (5th Cir. 2013).  "If a corporation does not complain about it's [*sic*] agents actions, then the agent cannot be held to have acted contrary to the corporation's interests." *Id.* at 403.  Thus, under either state's law, Piper must plead that Janice acted with malice or bad faith; otherwise Piper has failed to state a claim against Janice for tortious interference.

Piper's complaint adequately pleads these facts.  As with Amendia's motion to dismiss this claim, the issues Janice raises are not properly raised on a motion to dismiss.  Whether Janice's actions were either: a) motivated by malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm Piper; b) taken at Omni's expense; or c) objected to by Omni, are all issues of fact.[14]  By pleading that Janice "acted outside the scope of his corporate authority and solely

---

[13] In its complaint, Piper identifies Janice as a member of several limited liability companies, and a partner in several partnerships, that collectively controlled Omni. Dkt. No. 30 at 1-2. Piper also attaches to its complaint two letters addressed to Janice which both identify him as Chief Executive Officer of Omni. Dkt. Nos. 30-2, 30-3.  Taking these facts as true, it is clear that Janice was an agent of Omni, and was actually, or the functional equivalent of, a corporate officer.

[14] To the extent Janice did urge Omni to breach any obligation it had to pay Piper its fee, he actually saved Omni money.  If Omni's defense is correct—namely that the contract did not obligate

for his own benefit" and did so "willfully and intentionally," Piper has met its burden under Rule 12.

Accordingly, Piper's claim of tortious interference by Janice should not be dismissed.

## G.   Money Had and Received Against Janice

Finally, just as it did with Amendia, Piper also sues Janice on the theory of money had and received. It alleges that because Omni did not pay Piper, the assets that Amendia acquired were $1.5 million more valuable than they otherwise would have been. Piper alleges further that Amendia must have paid more for Omni than it would have had the contract been honored. And because Janice received all of the proceeds paid Omni, some of the money that Janice received was for assets (*i.e.* money) that should have been paid to Piper. Piper contends that Janice therefore holds money which in equity and good conscience belongs to Piper. In his motion to dismiss, Janice argues that he is a company officer and owner who received proceeds from a transaction with Amendia, none of which were ever in Piper's possession. He argues that if Omni owed money to Piper, then Piper's proper remedy is a suit against Omni for breach of contract.

Once again, Piper is attempting to stretch the money had and received claim too far. Just as Piper did not confer a benefit upon Amendia through the Omni agreement, Piper did not confer a benefit upon Janice. Any services Piper provided under the contract were provided to Omni. The proper action in such a circumstance is a suit against Omni, or its successor, for breach of contract.[15] Janice does not hold any money that Piper ever had. Those assets—more properly stated, that

---

Omni to pay Piper for a transaction Omni had arranged for itself—Janice's actions were precisely what a CEO should have done.

[15] Piper argues that Janice, as the ultimate beneficiary of the sale of Omni to Amendia, was also the ultimate beneficiary of the services Piper rendered to Omni. But that is a veil-piercing theory, not a cause of action for money had and received.

liability—if "held" by anyone, was held by Omni.  Accordingly, Piper's claim for money had and received against Janice should also be dismissed.

## V.  RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** the Defendants' Motions to Dismiss.  Piper Jaffray & Co.'s claims of unjust enrichment and money had and received against Amendia, Inc., and its claim of money had and received against David Janice, should be **DISMISSED WITHOUT PREJUDICE**.  All other relief sought by the movants should be **DENIED**.

## VI.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report &
Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is
directed to mail such party a copy of this Report and Recommendation by certified mail, return
receipt requested.

SIGNED this 12th day of June, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE